# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00813-CV

**Appellants, Dr. Phillip Osborne and Deborah Osborne //
Cross-Appellant, State Farm Lloyds**

**v.**

**Appellee, Jauregui, Inc. // Cross-Appellees, Dr. Phillip Osborne and Deborah Osborne**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
### NO. 99-08727, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING

## D I S S E N T I N G   O P I N I O N

Because I believe the trial court properly denied the Osbornes' request for attorney's fees but improperly denied State Farm's request for subrogation rights, I must respectfully dissent.

The Osbornes bought their house in 1997 for slightly more than $1 million. State Farm paid the Osbornes a total of $1,874,687,[1] and the Osbornes sold the house "as is" before trial for $750,000. The Osbornes settled before trial with the defendants, obtaining $1,260,500 that was placed into the court's registry, and proceeded to trial against Jauregui. The jury found that the Osbornes suffered damages totaling $835,158.78 and that Jauregui was responsible for 48% of those damages; the settling defendants were found to be responsible for 52% of the damages. The trial

---

[1] State Farm paid a total of $1,874,687 for the Osbornes' claims. Most of that was paid to the Osbornes, including policy limits of $1,071,600 for damage to the structure, but about $500,000 was paid to third parties for alternate living expenses and moving/storage costs. State Farm also paid more than $150,000 for experts to examine the house and testify at trial.

court found that the Osbornes had incurred $1,149,641.30 in attorney's fees, $17,606.01 of which they have already been paid. The Osbornes now seek $1,132,035.29 in attorney's fees, plus $50,000 for appellate fees, and seek to keep the $1.2 million in settlement funds.

I cannot agree with the majority's conclusions that State Farm is not entitled to subrogation against the settlement funds or that the Osbornes can be considered "prevailing parties" who may recover attorney's fees from Jauregui. I believe that the majority's holding violates the one-satisfaction rule and State Farm's rights to subrogation. My disagreement with the majority with regard to both attorney's fees and subrogation is guided by my belief that a plaintiff should not continue to litigate a claim after being fully compensated and made whole.

**Attorney's Fees**

The majority states that "the jury found Jauregui responsible for $835,000 in damages." This, however, is not accurate. The jury found that Jauregui was responsible for 48% of those damages, which amounts to $400,876.21. Under the DTPA, a prevailing plaintiff may recover reasonable attorney's fees, Tex. Bus. & Comm. Code Ann. § 17.50(d) (West Supp. 2006), and the supreme court has explained that to "prevail" under the DTPA means "to prevail in a claim under the Act, rather than to obtain a net recovery on all claims joined in one lawsuit." *McKinley v. Drozd*, 685 S.W.2d 7, 9 (Tex. 1985). A plaintiff may be considered a prevailing party and thus may recover attorney's fees even if his claim is "entirely offset by a claim of an opposing party." *Id.*; *Roberts v. Grande*, 868 S.W.2d 956, 962 (Tex. App.—Houston [14th Dist.] 1994, no writ).

I agree with our sister court, which stated that the rule that a net recovery is not necessary for a plaintiff to be considered a prevailing party "does not apply in a case in which a

consumer has already received payment of an amount equal to or greater than the damages found by the fact finder in the trial of the consumer's case against the non-settling defendant." *Hamra v. Gulden*, 898 S.W.2d 16, 19 (Tex. App.—Dallas 1995, writ dism'd w.o.j.). "It is one thing to allow a party an attorney's fees award on a successful claim notwithstanding an opposing party's success on an offsetting claim. However, it is another to allow attorney's fees on a claim that, although successful, was paid in full before trial." *Id*.; *see also Buccaneer Homes of Ala., Inc. v. Pelis*, 43 S.W.3d 586, 591 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (consumer sued retailer and manufacturer, settling pretrial with retailer, and jury found manufacturer breached warranty; because damages were paid in full under pretrial settlement with retailer, consumer could not recover attorney's fees from manufacturer). In *McKinley*, the supreme court held that under the DTPA, "the more sensible meaning of the word 'prevail' is to prevail in a claim under the Act, rather than to obtain a net recovery on all claims joined in one lawsuit," 685 S.W.2d at 9, but it did not hold that a claim entirely offset by the settlement *of that same claim by other defendants* could support an award of attorney's fees. *McKinley* considered only whether one party's damages award, which was offset by a damages award for the opposing party's claims against them, could support an award of attorney's fees. *See id*. at 8-9.

The settling defendants paid $1,260,500 to settle the very claims the Osbornes asserted against Jauregui.[2] I would hold that under these circumstances the Osbornes cannot be considered prevailing parties under the DTPA.

---

[2] I believe this conclusion is supported by the Osbornes' argument that they could not segregate fees because the facts necessary to prove their claims against the settling defendants were "essentially the same facts necessary to prove that Jauregui . . . did not construct the house in a good and workmanlike manner," noting that Jauregui, as architect and builder, was responsible for the settling defendants' conduct. I do not, however, believe that the Osbornes may be excused from segregating their attorney's fees.

I also believe that the majority's holding promotes a bad public policy in that it encourages a plaintiff to gamble on continuing to trial despite having been fairly compensated for his damages, in essence proceeding to trial on the chance that he might recover more than his real damages solely to obtain attorney's fees. If a plaintiff can recover attorney's fees that accrue after he is fully compensated by continuing to litigate a claim after being made whole, he risks nothing by seeking more recovery than he is entitled to under the one-satisfaction rule. This does not promote justice or efficiency in our legal system.

A plaintiff who chooses to continue litigation after he has been fully compensated for his damages should not be allowed to recover attorney's fees incurred in seeking excess compensation after he is made whole. Because the claims on which the jury found against Jauregui were the same as those settled in an amount well in excess of the jury's award and because the Osbornes utterly failed to even attempt to segregate their attorney's fees, I would hold that the trial court did not err in finding that the Osbornes may not recover attorney's fees from Jauregui. *See Buccaneer Homes*, 43 S.W.3d at 591; *Hamra*, 898 S.W.2d at 19.

## Subrogation

I further disagree with the majority's conclusion that State Farm has not shown itself entitled to subrogation against the settlement funds and believe that State Farm's contractual subrogation rights trump considerations of equity under the supreme court's recent decision in *Fortis Benefits v. Cantu*, No. 05-0791, 2007 Tex. LEXIS 603, at *18-19 (Tex. June 29, 2007). The contract provides that State Farm "may require an assignment of rights" and that if such an assignment is sought, the insured "must" sign any necessary documents to accomplish the assignment. The majority states that because the provision only says that State Farm *may* ask for an assignment, the

4

provision is ambiguous. I would emphasize the word "require" instead, which means that although State Farm's subrogation rights were not automatically asserted, when State Farm chose to assert its rights, the Osbornes were *required* to cooperate. In other words, once State Farm informed the Osbornes that it was seeking both contractual and equitable subrogation, the Osbornes were contractually required to cooperate.

Even if *Fortis Benefits* does not control to require subrogation under the contract, I would hold that State Farm is entitled to subrogation under equitable principles. First, I disagree with the majority's concerns about State Farm's appellate arguments that the Osbornes should not recover attorney's fees. State Farm acted in furtherance of its insureds' interests up through trial, assisting in negotiating settlements and providing evidence that the Osbornes suffered damages well in excess of those found by the jury. The Osbornes' "efforts to achieve the fullest possible recovery" are in direct opposition to State Farm's interests in the settlement funds, and I do not believe we should fault State Farm for its appellate stand against the Osbornes, taken only post-trial and post-judgment and after the Osbornes have opposed State Farm. Nor do I agree that State Farm's assertions that the Osbornes should not be awarded attorney's fees undercuts its rights to subrogation in equity. The majority, which later notes that at trial State Farm attempted to bolster the Osbornes' assertions of damages beyond those found by the jury, seems to fault State Farm coming and going, holding against it the fact that it opposes the Osbornes' continued quest for over-recovery, but penalizing it for assisting the Osbornes in maximizing their damages award from the jury.

I also disagree with the majority's statement that State Farm's assertions about the damages suffered by their insured or its testimony about sums it paid to the Osbornes under the policy were judicial admissions. State Farm paid the Osbornes well beyond the damages found by

5

the jury, relying on expert opinions, and, although those payments were later determined to be excessive, State Farm was still entitled to seek subrogation from the payments made by the settling defendants. The majority states that allowing State Farm to first attempt to obtain maximum recovery for its insured, motivated at least in part by its hopes of obtaining some repayment for the payments it made under the insurance policy, and then argue that the Osbornes' damages are limited to the jury's finding would mean that insureds in the future would risk being asked to repay excessive insurance payments through sums paid for uncovered damages, such as mental anguish, but I disagree. The trial court ruled that the Osbornes were not entitled to damages for mental anguish. Thus, State Farm is not seeking reimbursement from settlements paying for "uncovered damages." Nor has State Farm suggested that the Osbornes should repay the overpaid sums out of their own pockets. It seeks only to exercise contractual and equitable subrogation rights in the sums paid to settle the very claims covered by State Farm's insurance payments.[3] In the context of a subrogation action, an insurer should be able to assert that due to whatever cause it has overpaid an insured's claim, as evidenced by a jury's final determination of damages, and should be free to pursue subrogation rights in sums paid to settle the claims it paid to its insured.

---

[3] Texas courts have been "particularly hospitable" to subrogation rights, and equitable subrogation is applied liberally and broadly. *See Harris v. American Prot. Ins. Co.*, 158 S.W.3d 614, 622 (Tex. App.—Fort Worth 2005, no pet.) (Texas courts are "particularly hospitable" to subrogation); *II Deerfield Ltd. P'ship v. Henry Bldg., Inc.*, 41 S.W.3d 259, 268 (Tex. App.—San Antonio 2001, pet. denied) (doctrine of equitable subrogation given liberal and broad application); *see also Rowland & Rowland, P.C. v. Texas Employers Indem. Co.*, 973 S.W.2d 432, 436 (Tex. App.—Austin 1998, no pet.) ("there is an abundance of case law in which Texas courts have manifested their interest in examining settlements in third-party actions to ensure an insurance carrier's right to subrogation"); *Yonack v. Interstate Sec. Co.*, 217 F.2d 649, 651 (5th Cir. 1954) (Texas courts have been hospitable to subrogation and "have been in the forefront in upholding the right to it"). The majority's opinion, however, seems to take a distinctly hostile approach.

I disagree that State Farm failed to show that the settlements paid for the same claims paid under the policy. The jury's verdict determined the damages suffered by the Osbornes, and I believe we and the parties are bound by that determination. Thus, the settlement funds, paid by defendants against whom the Osbornes asserted the same damages found by the jury, paid for the property damage suffered by the Osbornes, the same injury compensated by State Farm's policy payments. Because there were no "uncovered" damages suffered in this case, there is no issue of State Farm recovering its policy payments from sums intended to pay for such uncovered injuries.

Finally, I strongly believe that barring State Farm from asserting subrogation rights in the settlement funds, thus allowing the Osbornes to recover those monies on top of the sums already paid by State Farm, violates the one-satisfaction rule. *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 303 (Tex. 2006). "[A]n injured party is entitled to but one satisfaction for the injuries sustained by him." *Bradshaw v. Baylor Univ.*, 84 S.W.2d 703, 705 (Tex. 1935). In other words, a plaintiff may not recover twice for a single injury. *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 390 (Tex. 2000); *AMX Enters., Inc. v. Bank One, N.A.*, 196 S.W.3d 202, 206 (Tex. App.—Houston [1st Dist.] 2006, pet. denied); *Buccaneer Homes*, 43 S.W.3d at 589. The one-satisfaction rule is applied to situations in which several defendants commit the same act or when multiple defendants commit technically different acts that result in the same, single injury. *See AMX Enters.*, 196 S.W.3d at 206 (citing *Casteel*, 22 S.W.3d at 390). The application of the rule is not limited to tort claims, and whether the rule may be applied depends not on the cause of action asserted but rather the injury sustained. *Id.* (citing *El Paso Natural Gas Co. v. Berryman*, 858 S.W.2d 362, 364 (Tex. 1993); *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 8 (Tex. 1991)).

Although the Osbornes sued multiple defendants, they suffered but one injury—the defective house. The Osbornes in essence concede this point by their argument that they are unable to segregate their attorney's fees incurred in suing the various defendants, arguing that the claims were too interrelated to be separated from one another. The jury found that the Osbornes had suffered $835,158.78 in damages, which was a definitive assessment of the Osbornes' damages. The Osbornes were entitled to be made whole for their injury, but not to more than is necessary to accomplish that.

I believe that State Farm is entitled to subrogation under the insurance contract, which trumps any considerations of equity. *See Fortis Benefits*, 2007 Tex. LEXIS 603, at \*18-19. Even when we consider equity, this issue raises similar public policy considerations as the question of whether a party is a prevailing party under the DTPA. The Osbornes filed suit after having been compensated by their insurer, settled with the subcontractors for an amount well beyond the damages they suffered and for which they had already been compensated by their insurer, and then continued with the lawsuit against Jauregui. The Osbornes have already recovered more than the amount in which they were damaged. Allowing them to recover further sums violates the one-satisfaction rule, promotes bad public policy, results in a windfall for the Osbornes well beyond the $835,000 in damages they suffered, and leaves State Farm without remedy to recover any of the nearly $2,000,000 it paid for the Osbornes' claims. Liberally applying the doctrine, *see Matagorda County v. Texas Ass'n of Counties County Gov't Risk Mgmt. Pool*, 975 S.W.2d 782, 785 (Tex. App.—Corpus Christi 1998), *aff'd*, 52 S.W.3d 128 (Tex. 2000), I would hold that State Farm is entitled to equitable subrogation against the settlement proceeds.

8

## Conclusion

If the Osbornes prevail on their arguments, they will have received a total of $3,885,187[4] in compensation for $835,159 in damages, in addition to more than $1.2 million in attorney's fees paid by Jauregui, which was found by the jury to be responsible for $400,876.21 of the Osbornes' damages. This surely violates the one-satisfaction rule, under which an injured party is entitled only to be made whole for his injury. Because the Osbornes received more in pretrial settlement of the same claims for which the jury awarded them damages against Jauregui, I would hold that they are not prevailing parties so as to recover attorney's fees under the DTPA. Further, I would hold that the trial court erred in refusing to award State Farm contractual subrogation interests in the settlement funds. Therefore, I respectfully dissent.

_____

David Puryear, Justice

Before Justices Patterson, Puryear and Henson

Filed:   August 29, 2007

---

[4]   This sum includes the $750,000 the Osbornes received for the sale of the house.