**IMPERIAL LOFTS, LTD., Appellant,**

v.

**IMPERIAL WOODWORKS, INC., Appellee.**

No. 10–06–00126–CV.

Court of Appeals of Texas, Waco.

Nov. 21, 2007.

Rehearing Overruled Jan. 22, 2008.

W. Stephen Rodgers, Rodgers & Miller PC, Bryan, C. Randall Michel, Law Office of Randy Michel, College Station, for appellant.

Robert J. Hanley, Neville & Hanley, Charles Buenger, Buenger & Associates, Waco, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

BILL VANCE Justice.

In this breach of contract and negligence suit, a building owned by Imperial Lofts, Ltd. (Lofts) was totally destroyed by fire while leased to Imperial Woodworks, Inc. (Woodworks). Lofts sued Woodworks and ARCO Metal Fabrication, Inc., Woodworks' contractor that was

working in the building when the fire began. A jury found: (1) Woodworks failed to comply with the lease; (2) the negligence of Woodworks and ARCO equally was a proximate cause of the fire; (3) the market value of the building was $535,000; and (4) Lofts also suffered $37,500 as consequential damages for architectural fees.

In a posttrial hearing on attorney's fees, the trial court found that Lofts' attorney's fees for trial and appeal were $140,000. Woodworks filed a motion for judgment, asserting that the trial court should disregard the jury's award of architectural fees and that Lofts was not entitled to any recovery because the building's market value was exceeded by Lofts' settlement credits and other payments as offsets. The trial court agreed and entered a take-nothing judgment and further found that Lofts was therefore not entitled to attorney's fees. Raising five issues, Lofts asserts:

1. That the trial court erred in concluding that Lofts was not legally entitled to recover attorney's fees.

2. That the trial court's finding of only $15,000 in appellate attorney's fees was an abuse of discretion and against the great weight of the evidence.

3. That the trial court erred in applying credits and offsets that were not properly pleaded, were not supported by the evidence, and were not correctly applied under the law.

4. That the trial court erred in disregarding the jury's award of $37,500 as con-

sequential damages for architectural fees.

5. That the trial court abused its discretion in assessing costs against Lofts.

Finding no error, we will affirm.

## Consequential Damages

■ We begin with issue four. Lofts asserts that the trial court erred by disregarding the jury's award of $37,500 as consequential damages for architectural fees. Woodworks moved the trial court to disregard that finding on no-evidence grounds.[1] In the final judgment, the trial court ruled that there was no evidence to support the jury's finding and, alternatively, that the architectural fees are not a proper element of damages.

■ Lofts had recently bought the building from Woodworks for $575,000 and had leased it back to Woodworks. At the time of the fire, Woodworks was in the process of vacating the building. Lofts had plans to develop the building into loft apartments and had spent approximately $177,000 in development costs, including architectural fees. Bill Wetterman, a principal in Lofts, testified to Lofts' development plans for the building and that its architectural fees were $74,533. Wetterman, who is not an architect, testified to his experience in working with and under architects and as an architect client. The trial court initially sustained Woodworks' objections to Wetterman testifying to the reasonableness and necessity of the architectural fees. Later, outside the jury's presence, the trial court reversed itself

---

1. In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson,* 168 S.W.3d 802, 807, 822 (Tex.2005). There is legally insufficient evidence or "no evidence" of a vital fact when (a) there is a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence conclusively establishes the opposite of the vital fact. *Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997).

and found that Wetterman could testify to reasonableness and necessity, but thereafter Lofts never presented Wetterman's opinion testimony on the architectural fees' reasonableness and necessity. Thus, there being no evidence of their reasonableness and necessity, the trial court did not err in disregarding the jury's finding.[2] Issue four is overruled.

### Insurance Payments and Settlement Credits

■ We next address issue three, which asserts that the trial court erred by applying insurance payments and settlements as offsets and credits when those payments were not raised by the pleadings, were not supported by the evidence, and were not correctly applied. Lofts first argues that Woodworks was required but failed to adequately plead the affirmative defense of payment under Rule of Civil Procedure 95. In an amended answer, Woodworks pleaded:

Defendant would further show that it is entitled to credit for sums paid in settlement or otherwise to Plaintiffs [Lofts] and/or Intervenors related to the fire incident made the basis of this lawsuit, as follows:

A. Settlement by and between IMPERIAL LOFTS, LTD., MERIDIAN DEVELOPMENT, INC., and ARCO METAL FABRICATION, INC.

B. Payment made by Security Insurance Company to Plaintiffs and/or Intervenors.

C. Payment made by Travelers Property Casualty Company or one of its affiliates to Plaintiffs and/or Intervenors.

D. Settlement by and between Security Insurance Company and ARCO METAL FABRICATION, INC.

E. Any other settlements that may have been made by and between Plaintiff's [sic] and Intervenors and any Third–Party or settling person.

In a "trial amendment" that is in the record, Woodworks repleaded the above five matters, claiming that "it is entitled to credit, whether by way of settlement credit, offset, set-off or otherwise, for sums paid in settlement or otherwise to Plaintiffs and/or Intervenors related to the fire incident made the basis of this lawsuit. . . ." It also pleaded that ARCO was a "settling person" under former Civil Practice and Remedies Code section 33.011(5) because of its settlement with Lofts and Meridian and that the jury should determine ARCO's proportionate responsibility under section 33.003. *See* Act of May 8, 1995, 74th Leg., R.S., ch. 136, § 1, 1995 Tex. Gen. Laws 971, 972–73 (amended 2003) (current version at TEX. CIV. PRAC. & REM.CODE ANN. §§ 33.003, 33.011(5) (Vernon Supp.2006)). Woodworks additionally pleaded that Lofts had made at least a partial recovery from the Travelers insurance policy that Woodworks carried on the building and that Lofts' acceptance of payment from Travelers was an accord and satisfaction of Lofts' claims against Woodworks or an election and waiver of its claims.

■ Rule 95 provides: "When a defendant shall desire to prove payment, he

---

**2.** Lofts pleaded that the fire completely destroyed the building and sought to recover the loss in the building's market value as damages for the permanent injury to the premises. *See Bayouth v. Lion Oil Co.,* 671 S.W.2d 867, 868 (Tex.1984); *Kraft v. Langford,* 565 S.W.2d 223, 227 (Tex.1978). When injury to land is permanent, damages are measured by loss in market value. *Porras v. Craig,* 675 S.W.2d 503, 504 (Tex.1984); *Kraft,* 565 S.W.2d at 227. Thus, if Wetterman had provided testimony on the architectural fees' reasonableness and necessity, we find no authority for their award in this case.

shall file with his plea an account stating distinctly the nature of such payment, and the several items thereof; failing to do so, he shall not be allowed to prove the same, unless it be so plainly and particularly described in the plea as to give the plaintiff full notice of the character thereof." TEX.R. CIV. P. 95. Payment is an affirmative defense to a claim on a debt, such as a promissory note, where typically the defendant alleges that it has paid the alleged debt. *See, e.g., Rea v. Sunbelt Savings FSB*, 822 S.W.2d 370, 373 (Tex.App.-Dallas 1991, no writ). But the Rule 95 cases cited by Lofts concern alleged payments made by the defendant to the plaintiff, not by third parties such as insurers. *See, e.g., Sugar Land Properties, Inc. v. Becnel*, 26 S.W.3d 113, 121 (Tex.App.-Houston [1st Dist.] 2000, no pet.). We thus reject Lofts' application of Rule 95 to Woodworks' pleading of settlement payments, credits, and offsets. Accordingly, Woodworks was not barred by Rule 95 from presenting evidence of those payments, credits, and offsets. We also hold that Woodworks adequately pleaded the lease provision regarding its contractual duty to maintain fire insurance on the building and the settlement payments, credits, and offsets in this case.

■ Lofts next argues that the evidence of payments as settlement credits or offsets was legally or factually insufficient, and that in any event, the collateral source rule prevents those payments from reducing the jury award. In the trial court, Woodworks asserted that Lofts had recovered settlement and insurance payments in excess of the jury's damage award of $535,000 and that therefore Lofts should recover nothing. The trial court agreed with Woodworks and entered a take-nothing judgment.

■ Under the one-satisfaction rule, a plaintiff "is entitled to but one satisfaction for the injuries sustained by him." *Bradshaw v. Baylor Univ.*, 126 Tex. 99, 84 S.W.2d 703, 705 (1935). An exception to that rule is the collateral source rule. *See Brown v. American Transfer & Storage Co.*, 601 S.W.2d 931, 936 (Tex.1980); *Triumph Trucking, Inc. v. Southern Corporate Ins. Managers, Inc.*, 226 S.W.3d 466, 471 (Tex.App.-Houston [1st Dist.] 2006, pet. denied). We thus address the evidence of the settlements and the payments to Lofts, their applicability as credits or offsets, and the collateral source rule's role.

Lofts settled with ARCO, a settling third-party defendant, for $150,000. Woodworks elected a dollar settlement credit. *See* Act of May 8, 1995, 74th Leg., R.S., ch. 136, § 1, 1995 Tex. Gen. Laws 971, 974 (amended 2003 & 2005) (current version at TEX. CIV. PRAC. & REM.CODE ANN. § 33.012(b) (Vernon Supp.2006)). Woodworks, which was found negligent and 50% proportionally responsible (as was ARCO), was entitled to a $150,000 credit against the $535,000 damage finding, and the trial court did not err in that respect. *See id.* 1995 Tex. Gen. Laws 971, 971 ("this chapter applies to any cause of action based on tort") (current version at TEX. CIV. PRAC. & REM.CODE ANN. § 33.002(a)(1) (Vernon Supp.2006)).

The lease between the parties required Woodworks to maintain fire insurance on the building in an amount not less than $700,000. It is undisputed that Woodworks complied with the lease in that respect and had a fire insurance policy on the building with Travelers Lloyds with Lofts named as an insured. At trial there was testimony that Lofts had received an initial payment on the Travelers policy in the amount of $384,313.72. This payment was not from a source collateral to Woodworks; it was from insurance procured and paid for by Woodworks as required by

the lease. *See Publix Theatres Corp. v. Powell*, 123 Tex. 304, 71 S.W.2d 237, 240–42 (1934); *cf. Brown*, 601 S.W.2d at 935–36. As a result, the collateral source rule does not preclude the $384,313.72 insurance payment from being an offset against the $535,000 damage finding. Thus, the trial court correctly offset from the $535,000 damage finding the $150,000 settlement and the $384,313.72 insurance payment: $535,000–150,000–384,313.72 = $686.28.

There was also evidence that Lofts had sued Travelers to recover the remainder of the $700,000 in coverage and to recover statutory penalty interest, attorney's fees, and other damages for bad faith. In posttrial proceedings, the trial court received evidence (in the form of Lofts' posttrial interrogatory answer) that Lofts settled the suit against Travelers for $600,000.[3] As the party seeking the benefit of that settlement, Woodworks had the burden to prove the settlement credit amount by placing the settlement agreement or some evidence of the settlement amount in the record. *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 927 (Tex.1998); *see Utts v. Short*, 81 S.W.3d 822, 828 (Tex.2002). Upon Woodworks doing that, the burden shifted to Lofts to tender the settlement agreement with Travelers to show that Woodworks was not entitled to an offset for the settlement amount or for any allocation of it. *See Utts*, 81 S.W.3d at 828; *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 391–92 (Tex.2000). If the plaintiff (Lofts) cannot satisfy this burden, then the nonsettling party (Woodworks) is entitled to a credit equaling the entire settlement amount. *Ellender*, 968 S.W.2d at 928.

Lofts tendered its settlement agreement (actually entitled Release In Full) with Travelers, but it does not allocate the $600,000 settlement payment among Lofts' various claims against Travelers—it does not even mention the $600,000 amount.[4] Therefore, Woodworks was entitled to an offset of the entire settlement amount ($600,000), which greatly exceeds the $686.28 that remained from the settlement credit and insurance payment offset.[5] Ac-

3. Lofts was required by its mortgage lender to have its own first-party insurance (which it had with Security Fireman's Fund Insurance), and it paid Lofts $575,000, which Lofts used to pay its mortgage on the premises. We agree with Lofts that the collateral source rule bars this insurance from being used to reduce the jury's damage finding. *See Brown*, 601 S.W.2d at 935–36.

4. The settlement agreement includes the following provision:

> IMPERIAL LOFTS and TRAVELERS expressly agree that the Release only extends to the above-described policy and the first-party property claim asserted by IMPERIAL LOFTS. It shall not apply to any third-party claims asserted by IMPERIAL LOFTS in the case styled, *"Imperial Lofts, et. al. vs. Imperial Woodworks, Inc."*, et al., Cause No. 2000–2990–3 currently pending in the 74th Judicial District Court of McLennan County, Texas.

Lofts asserts that this provision precluded the use of the settlement agreement to release any of its claims against Woodworks, and from that assertion, Lofts also appears to be arguing that this provision precludes the application of the $600,000 settlement as a credit. In addition to apparently confusing a release with a settlement credit, Lofts cites no authority in support of the proposition that such language in a settlement agreement can preclude a settlement amount from being applied as a credit.

5. And, we can easily deduce from the record that, because Lofts was suing Travelers for the remainder of the $700,000 policy amount (in addition to claims for interest, attorney's fees, and damages for bad faith), more than $686.28 of the $600,000 settlement was allocated in some fashion to the remainder of the policy amount. Also in the record is testimony that, before the Travelers settlement was reached, the trial court in Lofts' suit against Travelers had granted summary judgment for Lofts that it was entitled to the entire $700,000 policy amount.

cordingly, the trial court did not err in rendering a take-nothing judgment on damages. We overrule issue three.

### Attorney's Fees and Costs

After initially finding Lofts' necessary and reasonable attorney's fees for trial and appeal to be $140,000, the trial court in the final judgment ruled that Lofts was not legally entitled to recover attorney's fees. In issue one, Lofts asserts that the trial court's ruling was erroneous because it was the prevailing party. We review the trial court's decision de novo. *Gereb v. Smith–Jaye*, 70 S.W.3d 272, 273 (Tex.App.-San Antonio 2002, no pet.).

■ In this case, the jury found for Lofts on its breach of contract and negligence claims and awarded damages to Lofts, but the damage award was properly offset by the insurance payment and the settlement credits. As a result, Lofts did not obtain a net recovery. Thus, the precise issue before us is whether Lofts is a prevailing party after the offsets application that resulted in a take-nothing judgment.

■ The parties' lease agreement provides that the prevailing party is entitled to recover attorney's fees. Lofts also sought attorney's fees under section 38.001(8) of the Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. REM.CODE ANN. 38.001(8) (Vernon 1997) (authorizing recovery of attorney's fees for valid claims based on oral or written contract). Well-settled law requires that a party must prevail to recover attorney's fees under chapter 38. *Green Int'l., Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex.1997). For a party to recover attorney's fees under section 38.001, a party must (1) prevail on a cause of action for which attorney's fees are recoverable, and (2) recover damages. *Id.* (quoting *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 437 (Tex.1995)); *see*

*also Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 201 (Tex.2004) (per curiam) (it was not entitled to recover attorney's fees because it was not awarded damages on its breach of contract claim).

■ However, the party requesting attorney's fees need not obtain a net recovery to be entitled to recover attorney's fees. *McKinley v. Drozd*, 685 S.W.2d 7, 10–11 (Tex.1985) (party entitled to attorney's fees even though damages were offset by opposing party's counterclaim); *Matthews v. Candlewood Builders, Inc.*, 685 S.W.2d 649 (Tex.1985) (same). But the no-net-recovery exception does not apply when the damages awarded by the jury are offset by settlement credits or insurance payment credits. *See, e.g., Blizzard v. Nationwide Mut. Fire Ins. Co.*, 756 S.W.2d 801, 806–07 (Tex.App.—Dallas 1988, no writ) ("It is one thing to allow a party an award of attorney fees on a successful claim notwithstanding an opposing party's success on an offsetting claim. It is quite another to allow attorney fees on a claim which, although successful, was paid in full before trial".); *see also Fire Ins. Exch. v. Sullivan*, 192 S.W.3d 99, 109–10 (Tex.App.—Houston [14th Dist.] 2006, pet. denied); *Buccaneer Homes of Alabama, Inc. v. Pelis*, 43 S.W.3d 586, 591 (Tex. App.—Houston [1st Dist.] 2001, no pet.); *Hamra v. Gulden*, 898 S.W.2d 16, 19–20 (Tex.App.—Dallas 1995, writ dism'd); *Hartnett v. Hampton Inns, Inc.*, 870 S.W.2d 162, 168–69 (Tex.App.—San Antonio 1993, writ denied).

Because the settlement credits and insurance payment exceeded the jury's damage award, we hold that Lofts was not the prevailing party and was not entitled to recover its attorney's fees. We overrule issue one and thus need not address issue two, which complains of the finding of appellate attorney's fees.

**8**

Issue five complains that the trial court abused its discretion in assessing costs against Lofts. The successful party is entitled to recover taxable court costs. TEX.R. CIV. P. 131. A defendant who obtains a take-nothing judgment is a successful party. *See Denney v. Texas Employers Ins. Ass'n,* 780 S.W.2d 412, 413 (Tex. App.—Texarkana 1989, no writ) ("The party in whose favor a take-nothing judgment is entered is the prevailing party."). Woodworks was the prevailing and successful party: The trial court properly entered a take-nothing judgment and properly refused to award Lofts its attorneys fees. For the same reasons expressed above, the trial court did not abuse its discretion in assessing costs against Lofts, and we overrule issue five. *But see Caesar v. Bohacek,* 176 S.W.3d 282, 286 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (in negligence case, plaintiff was successful party despite fact that settlement credit exceeded jury's damage award to plaintiff, who thus suffered a take-nothing judgment, and trial court properly assessed costs against defendant); *Perez v. Baker Packers,* 694 S.W.2d 138, 143 (Tex.App.—Houston [14th Dist.] 1985, writ refd n.r.e.) (same). We overrule issue five.

### Conclusion

Having overruled Lofts' issues, we affirm the trial court's judgment.